**Alfredo BENNUN, Plaintiff,**

v.

**BOARD OF GOVERNORS OF RUTGERS, the STATE UNIVERSITY OF NEW JERSEY, et al., Defendants.**

**Alfredo BENNUN, Plaintiff,**

v.

**BOARD OF GOVERNORS OF RUTGERS, the STATE UNIVERSITY OF NEW JERSEY and Edward Bloustein, Defendants.**

Nos. 837–72, 75–1621.

United States District Court,
D. New Jersey,
Civil Division.

May 21, 1976.

Rodgers, McCulloch & Barlow, by Kenneth McCulloch, New York City, for plaintiff.

Pitney, Hardin & Kipp, by S. Joseph Fortunato, Morristown, N. J., for defendants, Board of Governors of Rutgers, etc. and Edward Bloustein.

Rothbard, Harris & Oxfeld, by Emil Oxfeld, Newark, N. J., for defendants, Wilhoft, Somberg and Anderson.

## OPINION

MEANOR, District Judge.

The defendants, Board of Governors and Edward Bloustein, have moved for dismissal of the amended complaints or for summary judgment in both of these civil actions.[1]

## THE STATE SUIT

On April 6, 1972, the plaintiff, Alfredo Bennun, an associate professor of biochemistry, filed a complaint in the Superior Court of New Jersey, Law Division (No. L–22164–71), naming as defendants three faculty members who, together with the plaintiff, were employed at the Newark College of Arts and Sciences of Rutgers University. The complaint alleged that these three had maliciously interfered with the tenure granting process as a result of which the plaintiff had been denied tenure. In January 1973, plaintiff amended the complaint to add Rutgers as a defendant on the theory that an agent of the University had negligently prepared and presented the plaintiff's personnel papers at the time he was considered for tenure, and that Rutgers had negligently developed regulations and policies for promotion and tenure which denied plaintiff a fair hearing or review. Plaintiff sought compensatory and punitive damages on account of each of these alleged acts.

---

1. At oral argument, the attorney for the three other defendants, Professors Wilhoft, Somberg and Anderson, moved to join in the pending motion. In view of the court's conclusion that the defense of res judicata, which this motion seeks to raise, would bar the action against these three as completely as it would bar the action against the other defendants, the oral motion to join is granted. The plaintiff will suffer no prejudice thereby as the arguments which have been made by Rutgers and Bloustein and which have been met by the plaintiff's briefs apply equally to the other defendants and would have served as the basis of any subsequent motion by them based upon this opinion.

On February 5, 1974, plaintiff's state court action went to trial before the Honorable Arthur C. Dwyer, J.S.C. The trial ended on March 1, 1974. The amended complaint was dismissed as to Rutgers at the close of the plaintiff's case; by opinion dated March 15, 1974, the judge dismissed the entire amended complaint.

## THE FIRST FEDERAL SUIT

In May 1972, the plaintiff commenced the first of two federal court actions. Named as defendants in this action were Rutgers, the Board of Governors of Rutgers, Edward Bloustein, the president of Rutgers, and the three individual faculty members joined as defendants in the state case. The amended complaint alleged that Dr. Bennun had been wrongfully denied tenure and sought damages and back pay pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. §§ 1983 and 1985, 28 U.S.C. § 1343(3) and the Fifth and Fourteenth Amendments to the United States Constitution.

On June 9, 1972, the Board of Governors of Rutgers, upon the recommendation of President Bloustein, voted to grant tenure to the plaintiff. Thereafter, on October 1, 1973, the plaintiff filed a second amended complaint. The jurisdictional allegations of this complaint fail to mention 42 U.S.C. § 2000e et seq. Nevertheless, it is clear that the first count, which is similar in many respects to the first count alleged in the previous amended complaint, was intended to make out a claim under Title VII. The essence of the first count is that, in spite of his having received tenure in 1972, the defendants continued to deny Dr. Bennun the rights and privileges of a tenured professor on account of his national origin and his opposition to discriminatory practices. The second count alleges a violation of § 1983 in that the defendants acted to deprive him of his right to tenure on account of his national origin and heavy Spanish accent and did so acting under color of state law in violation of due process and equal protection. The third count of the amended complaint alleges a violation of 42 U.S.C. § 1985. This count involves only the three individual defendants. It alleges that they conspired together to deprive the plaintiff of his right to tenure and that, following the grant of tenure by the Board of Governors, these three continued to deprive the plaintiff of the rights and privileges associated with his status as professor.

A comparison of the original complaint with the second amended complaint reveals that the amendment was made to incorporate events that happened after the filing of the first complaint. In particular, the amendment concerns itself with the alleged delay in granting tenure, not with the failure to grant tenure. The amendment also alleges that the conspiracy to deprive the plaintiff of tenure has become a conspiracy to deprive him of the privileges etc. of a tenured professor. The alleged activities of the defendants are in the nature of a continuing course of conduct.

## THE SECOND FEDERAL SUIT

On September 22, 1975, Dr. Bennun began a second federal suit. An amended complaint was filed and served October 22, 1975. The Board of Governors of Rutgers and Edward Bloustein, the president of the University, were the named defendants. This action is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Paragraph 8 of the amended complaint alleges that the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and that, following the exhaustion of his administrative remedies, he received a right to sue letter from the E.E.O.C. Suit was filed within 90 days of the receipt of this letter.

Paragraph 11 of the complaint alleges that since at least March 24, 1972 the defendants intentionally engaged in unlawful employment practices because of the plaintiff's national origin. Paragraph 11 then sets out, at length, a list of allegedly discriminatory acts. Many of these acts were previously pleaded in the second amended complaint filed in the first federal suit. Many were also involved in the state suit. The only apparent distinction between the

claim in this suit and that set forth in the first count of the previous suit is that this suit resulted from a second right to sue letter. That is, the plaintiff filed charges with the E.E.O.C. on November 10, 1971 and then again on November 6, 1973. In each case a right to sue letter issued from the Commission. Giving a broad reading to the allegations of the first count of the first federal suit, it is apparent that the allegations of this second suit are subsumed within the first. It is also apparent that those events set out in ¶ 11 of the second suit which occurred subsequent to the filing of the second amended complaint in the first federal suit are alleged to be a part of a continuing practice of discrimination on the part of the defendants.

## RES JUDICATA

■ Principles of res judicata are fully applicable to actions brought under the federal Civil Rights Act. *Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439, 454 (1973). Thus, where a cause of action which encompasses a claim under the Civil Rights Act reaches judgment in one court, the judgment of that court will be given the same preclusive effect by a second court as would any other judgment of that first court.

■ 28 U.S.C. § 1738 extended the Full Faith and Credit provisions of the United States Constitution, Art. 4, § 1 to all courts, federal as well as state. *Davis v. Davis*, 305 U.S. 32, 40, 59 S.Ct. 3, 6, 83 L.Ed. 26, 29 (1938). Under the principles of Full Faith and Credit, "[s]tate court judgments are entitled to the same *res judicata* effect in Federal courts as in State courts . . . and this principle is applicable to decisions involving Federal constitutional questions as well as issues of State law." *Olson v. Board of Educ. of Union Free School Dist. No. 12, Malverne, N. Y.*, 250 F.Supp. 1000, 1004, n.8 (E.D.N.Y.1966), appeal dismissed 367 F.2d 565 (2d Cir. 1966) (citations omitted). Thus, the question presented is to what extent the judgment of the Superior Court of New Jersey, entered February 22, 1974, dismissing the plaintiff's cause of ac-

tion would bar the instant case if it were brought in the courts of New Jersey.

■ It is clear from the review of the pleadings conducted above that all of the claims filed in this court arise out of the same complex of facts that gave rise to the state court action. New Jersey law is committed to the "enlightened policy that just and expeditious disposition at one time and place of all matters in controversy between the parties is to be encouraged." *Wangler v. Harvey*, 41 N.J. 277, 287, 196 A.2d 513, 519 (1963) (concurring opinion). Following the adoption of the reforms introduced by the Judicial Article of the 1947 Constitution of New Jersey, which joined the powers of law and equity in one Superior Court, New Jersey courts have consistently sought to resolve all claims arising out of the same factual circumstances in a single action. For instance, a judgment denying a claim for rescission will subsequently bar an action for damages arising out of the same factual situation. *Ajamian v. Schlanger*, 14 N.J. 483, 103 A.2d 9 (1954). In another case, the plaintiff was precluded from bringing a suit for damages arising out of the refusal of the county medical society to admit him to membership. He had previously brought an action in lieu of prerogative writs to compel the board to admit him to membership and had won the suit. The court held that the second action for damages sustained prior to the judgment in the first suit was barred by the single controversy doctrine. *Falcone v. Middlesex Co. Med. Soc.*, 82 N.J.Super. 133, 196 A.2d 808 (Law Div.1964), affirmed 87 N.J.Super. 486, 210 A.2d 78 (App.Div.1965), modified 47 N.J. 92, 219 A.2d 505 (1966). The same reasoning compels the conclusion that the present actions, had they been brought in New Jersey, would be barred. They are merely different theories advanced by the plaintiff for recovery upon the same cause of action which was the subject of the previous litigation in the state court. Similar results have been reached by other federal courts confronted with the same issue. See, e. g., *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir. 1974), cert. denied 419 U.S. 1038, 95

S.Ct. 526, 42 L.Ed.2d 316 (1974); *Davis v. Towe*, 379 F.Supp. 536 (E.D.Va.1974).

Of course, the New Jersey "single controversy doctrine" would have no application if the courts of New Jersey were incompetent to entertain the claims presented in the instant cases. Indeed, the plaintiff has argued that the state courts are without jurisdiction over the claims pleaded here. It is established that state courts exercise concurrent jurisdiction with the federal district courts over cases arising under 42 U.S.C. § 1983. *Long v. District of Columbia*, 152 U.S.App.D.C. 187, 469 F.2d 927 (1972). This holding is equally applicable to cases arising under 42 U.S.C. § 1985. While the question never has been decided whether state courts also exercise concurrent jurisdiction over suits arising under the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e et seq., no reason appears to conclude that they do not.[2]

Prior to the passage of the 1875 Judiciary Act,[3] the federal district courts exercised no general federal question jurisdiction. This Act invested them with the power to exercise jurisdiction over these cases, subject to a $500 amount in controversy requirement. This Act did not, however, alter the general rule, established more than half a century prior to its passage, that state courts of general jurisdiction have the power to exercise jurisdiction over cases arising under the Constitution, laws or treaties of the United States unless this power is expressly taken away by Congress. *Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 25–27, 5 L.Ed. 19, 24–25 (1820). This general rule continues to maintain its vitality. See *Dowd Box Co. v. Courtney*, 368 U.S. 502, 508, 82 S.Ct. 519, 523, 7 L.Ed.2d 483, 487 (1962).

42 U.S.C. § 2000e–5(f)(1) creates several different causes of action for violation of the substantive provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. This subsection provides that:

. . . the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision . . . the Attorney General . . . may bring a civil action against such respondent *in the appropriate United States district court.* . . . (Emphasis added.)

Otherwise, in cases where neither the Commission nor the Attorney General has brought suit within a specified period of time, one or the other of them shall so notify the person aggrieved and:

. . . within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . ..

Subsection 2000e–5(f)(3) provides that:

Each United States district court . . . shall have jurisdiction of actions brought under this subchapter. . . .

It is clear that neither the language giving rise to the cause of action by the person aggrieved nor the language investing the district courts with jurisdiction over these causes of action either expressly or by necessary implication vests the federal courts with exclusive jurisdiction over these matters. It is arguable that the language describing the Attorney General's right to bring a suit against a government, governmental agency or political subdivision precludes him from bringing such an action in the state courts; however, there is no comparable language in the description of the right of the person aggrieved to bring an

**2.** Two cases cited by the plaintiff contain language to the effect that "to the federal courts alone is assigned the power to enforce" the provisions of Title VII. *Hutchings v. U. S. Industries, Inc.*, 428 F.2d 303, 310 (5th Cir. 1970), and *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969). In both of these cases, the Fifth Circuit Court of Appeals was concerned with the *lack* of enforcement powers in the *E.E.O.C.* The court was not faced with the question of the exclusivity of federal court jurisdiction vis-a-vis state courts.

**3.** Act of March 3, 1875, § 1, 18 Stat. 470.

action. Nor is there any compelling indication in the legislative history of the Act that Congress meant to create an exclusive federal remedy.

 In keeping with the general rule allowing state courts jurisdiction concurrent with that of the federal district courts over cases arising under the Constitution, laws or treaties of the United States, see *Dowd Box Co.*, supra, I must conclude that the Superior Court of New Jersey had jurisdiction to entertain the plaintiff's claim under the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e et seq. and, consequently, had jurisdiction to entertain all of the claims the plaintiff has brought to this court. Therefore, the judgment of that court shall bar the actions pending in this court to the same extent as it would if they were presently pending in one of the courts of New Jersey. It appearing to the court that the plaintiff's complaints relate exclusively or by an overwhelming preponderance to events that transpired prior to the trial of the action in the state court, both of these complaints will be dismissed. However, the plaintiff will be given 20 days from the date of this opinion to file an amended complaint relating to events subsequent to the trial of the state action. At the expiration of this period of time, an order will be entered dismissing the pending complaints. In drafting this new complaint, the plaintiff should bear in mind that allegations based upon conduct which is merely a continuation of the conduct involved in the state court case may also be barred by principles of res judicata. See, Restatement of Judgments, § 62(f) and (g).

In another case, this result might appear unduly harsh. In this case, however, the plaintiff was repeatedly warned by the state trial judge of the dangers he risked in splitting his cause of action between two courts. Efforts were made to persuade the plaintiff to amend his state complaint to include the allegations of his federal complaint, or alternatively, to try the whole case in the federal court. The plaintiff rather stubbornly refused to consolidate the actions in either one court or the other. It is not unreasonable to now deprive him of the chance to try his case twice.

## ALTERNATIVE GROUNDS FOR DISMISSAL AS TO RUTGERS AND BLOUSTEIN

 Defendant Bloustein also moves for dismissal as to him of the claims based upon 42 U.S.C. §§ 1983 and 1985. In support of this motion he relies upon *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Therein, the court stated, but did not hold, that it had "serious doubts whether on the facts as found there was made out the requisite Art. III case or controversy between the individually named respondents and petitioners." The court also noted, and appears to have rested its opinion upon the consideration that:

Here, the District Court found that none of the petitioners had deprived the respondent classes of any rights secured under the Constitution. Under the well-established rule that federal 'judicial powers may be exercised only on the basis of a constitutional violation,' *Swann*, 402 U.S. [401] at 16, [91 S.Ct. 1267, at 1276, 28 L.Ed.2d 554], this case presented no occasion for the District Court to grant equitable relief against petitioners. Id. at ——, 96 S.Ct. at 607, 46 L.Ed.2d at 573.

There are simply no allegations in the complaint that Dr. Bloustein personally deprived the plaintiff or caused the plaintiff to be deprived of any right, etc. secured by the Constitution. Indeed, the only time Dr. Bloustein's name is mentioned in the complaint is in ¶ 12, wherein it is alleged that Dr. Bloustein granted tenure to the plaintiff on June 5, 1972. On either of the bases discussed in *Rizzo*, supra, Dr. Bloustein is not a proper party to this action.

 Defendant, Board of Governors, moves to dismiss on the ground that it is not a "person" within the meaning of either § 1983 or § 1985. That motion will be granted. *Adkins v. Duval County School Board*, 511 F.2d 690 (5th Cir. 1975); *Blanton v. State University of New York*, 489 F.2d 377 (S.D.N.Y.1973).

The plaintiff's motion for discovery is mooted by this opinion and shall be denied.

Defendants shall submit an order in conformity with this opinion.