612 F.2d 1079
 21 Fair Empl.Prac.Cas. 1031,
22 Empl. Prac. Dec. P 30,564
Cynthia GUNTHER, Appellee,
v.
IOWA STATE MEN'S REFORMATORY and Victor Preisser, Acting
Commissioner of the Iowa Department of Social
Services, Appellants.
 No. 79-1332.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 6, 1979.
Decided Jan. 11, 1980.
Rehearing and Rehearing En Banc Denied Feb. 5, 1980.
 
 Stephen C. Robinson, Special Asst. Atty. Gen., Des Moines, Iowa, for appellants; Thomas J. Miller, Atty. Gen., Des Moines, Iowa, on brief.
 Gordon E. Allen, Allen, Babich & Bennett, Des Moines, Iowa, for appellee.
 Before GIBSON, Chief Judge,* STEPHENSON and HENLEY, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiff brought an action in federal district court[1] alleging the Iowa State Men's Reformatory at Anamosa (Anamosa) had discriminated against her solely on the basis of sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e[2] Et seq. The district court, in Gunther v. Iowa State Men's Reformatory, 462 F.Supp. 952 (N.D.Iowa 1979), held that employment practices which prevent women from obtaining jobs above the Correctional Officer I (CO I) level at the Men's Reformatory at Anamosa result in sex discrimination prohibited by Title VII, and the Men's State Reformatory appeals. We affirm the conclusion of the trial court.
 
 
 2
 In September 1974, plaintiff-appellee was employed by the Men's Reformatory at Anamosa as a CO I, although she satisfied the educational qualifications for the Correctional Officer II (CO II) classification. She performed some duties performed by CO II's but because of her sex did not perform all of the duties performed by male CO I's. She requested special training in riot control and self defense available to male officers and required for the CO II classification, but this was denied her. In April 1975, she applied for promotion to CO II status, which was denied her on the basis of her sex.
 
 
 3
 Plaintiff filed grievances with the Iowa Merit Employment Commission (I.M.E.C.) and the federal Equal Employment Opportunity Commission (EEOC) on May 21, 1975. Following the dictates of 42 U.S.C. § 2000e-5(c), the EEOC deferred any consideration of the case until the state I.M.E.C. considered the complaint. The I.M.E.C. ruled the plaintiff was entitled to the promotion, and the state district court upheld the ruling on appeal. In December 1977, the Iowa Supreme Court overturned the lower court and administrative ruling, finding under Iowa law that there existed a bona fide occupational qualification (bfoq) on which the state could premise the CO II classification. Iowa Department of Social Services v. Iowa Merit Employment Department, 261 N.W.2d 161 (Iowa 1977).
 
 
 4
 In October 1977, plaintiff filed a complaint in federal district court pursuant to Title VII alleging she was denied a promotion solely on the basis of her sex, and that no bfoq justified the sex discrimination. The case was submitted to the district court on cross-motions for summary judgment, to be decided on the record before the I.M.E.C. and judicial tribunals. The district court first ruled plaintiff's complaint was not barred by the res judicata or collateral estoppel effect of the Iowa Supreme Court decision. The court then concluded the prohibition of women from a CO II classification at Anamosa did not qualify as a bfoq exception[3] to Title VII's general prohibition against sex discrimination. It ordered that the plaintiff be promoted to the rank of CO II, with the qualification that Anamosa make a "functional assignment" of the plaintiff within the CO II classification to respect the inmates' privacy interests.
 
 
 5
 Appellants' first contention is that the federal lawsuit is barred by the doctrines of res judicata and collateral estoppel because of the state court adjudication. We must therefore determine whether Title VII provides plaintiffs a separate federal forum in addition to the state discrimination proceedings.
 
 
 6
 The United States Supreme Court examined the purpose and intent of Congress in enacting Title VII in Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). That case involved whether a final arbitration agreement would bar a subsequent Title VII action. In holding that an individual does not forfeit a private cause of action in federal court by first pursuing her grievance to final arbitration, the Court examined the intent of Congress in enacting Title VII, and its observations are relevant here.
 
 
 7
 Title VII provides for consideration of employment-discrimination claims in several forums. See 42 U.S.C. § 2000e-5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e-5(c) (1970 ed., Supp. II) (state and local agencies); 42 U.S.C. § 2000e-5(f) (1970 ed., Supp. II) (federal courts). And, in general, submission of a claim to one forum does not preclude a later submission to another. See 42 U.S.C. §§ 2000e-5(b) and (f) (1970 ed., Supp. II); McDonnell Douglas Corp. v. Green, (411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.
 
 
 8
 415 U.S. 47-49, 94 S.Ct. 1019-1020 (footnotes omitted).
 
 
 9
 Although there is some question as to whether federal courts have been given exclusive jurisdiction to hear Title VII claims,[4] we need not decide that question because here plaintiff could not raise her Title VII claim in the state proceedings. The state agency below was only given jurisdiction to hear the discrimination claim based on state law. Anamosa's appeal to the state district court, which affirmed the agency, was limited to the record before the agency. Anamosa's further appeal to the Iowa State Supreme Court was similarly limited by Iowa law. See Hoffman v. Iowa Department of Transportation, 257 N.W.2d 22, 24-25 (Iowa 1977).
 
 
 10
 In Batiste v. Furnco Construction Corp., 503 F.d 447 (7th Cir. 1974), Cert. denied, 420 U.S. 928, 95 S.C. 1127, 43 L.Ed.2d 399 (1975), plaintiffs brought a complaint with the Illinois Fair Employment Practice Commission, which dismissed the complaint. The plaintiffs then brought a Title VII claim in federal court. The Seventh Circuit held that no res judicata effect would be given the state proceeding.
 
 
 11
 We must agree with the ruling in Cooper v. Philip Morris, Inc., 464 F.2d 9 (6th Cir. 1972) where the court squarely rejected the application of the doctrines of election of remedies and res judicata to Title VII actions where plaintiffs had litigated their charges to final adjudication in state proceedings. There is a strong Congressional policy that plaintiffs not be deprived of their right to resort to the federal courts for adjudication of their federal claims under Title VII. * * * It is also apparent that if federal actions are barred by the application of election of remedies and res judicata, then the statutory scheme of deferral to state proceedings will be frustrated by requiring that the plaintiff, who desired to bring an action in federal court, first commence state proceedings but abandon them quickly before an adjudication is made.
 
 
 12
 * * * It has been determined that the Congressional policies embodied in Title VII require that res judicata not be applied to state adjudications. Cooper, supra; Voutsis v. Union Carbide Corporation, 452 F.2d 889 (2d Cir. 1971) and Young v. South Side Packing Company, 369 F.Supp. 59 (E.D.Wis.1973).
 
 
 13
 503 F.2d at 450. See also, Garner v. Giarrusso, 571 F.2d 1330, 1337-38 (5th Cir. 1978).
 
 
 14
 By its language Batiste applies to prior state "adjudications," although the facts in Batiste, Cooper, and Voutsis involved the res judicata effect of state administrative decisions and not appeals to state courts of those decisions. Nevertheless, we conclude the intent of Title VII and the language of Alexander v. Gardner-Denver Co., supra, indicate that in the present situation there should be a second, independent federal action even though the state agency ruling was appealed to the state courts, especially here where plaintiff did not seek the review, but was forced to defend the appeal.
 
 
 15
 Until the recent case of Sinicropi v. Nassau County, 601 F.2d 60 (2d Cir. 1979), federal courts deciding Title VII claims had consistently refused to give res judicata and collateral estoppel effect to state discrimination claims decided by state Courts. Kremer v. Chemical Construction Corp., 464 F.Supp. 468 (S.D.N.Y.1978), Reconsidered and dismissed in light of Sinicropi, 477 F.Supp. 587 (S.D.N.Y.1979); Nickel v. Highway Industries, Inc., 441 F.Supp. 477 (W.D.Wis.1977); Gilinsky v. Columbia University, 440 F.Supp. 1120 (S.D.N.Y.1977); Al-Hamdani v. State University of New York, 438 F.Supp. 299 (W.D.N.Y.1977); Beck v. Mather, 417 F.Supp. 648 (W.D.Va.1976); Benneci v. Department of Labor, 388 F.Supp. 1080 (S.D.N.Y.1975); Young v. Southside Packing Co., 369 F.Supp. 59 (E.D.Wis.1973).[5]
 
 
 16
 In Sinicropi v. Nassau County, supra, the Second Circuit, relying on its decision in Mitchell v. National Broadcasting Co., 553 F.2d 265 (2d Cir. 1977), held that res judicata effect should be given in subsequent Title VII actions to prior state court proceedings where the plaintiff chose to submit a state agency decision to review by state courts. Mitchell had applied res judicata in similar circumstances in a federal discrimination action brought under 42 U.S.C. § 1981. In a short per curiam opinion, the court in Sinicropi saw "no reason to distinguish between section 1981 and Title VII for res judicata purposes." Sinicropi v. Nassau County, supra, 601 F.2d at 62.
 
 
 17
 Although we question the holding in Sinicropi,[6] we need not decide the question before that court. An examination of the factual situation in the present case shows that Mitchell and Sinicropi, supra, are distinguishable and not controlling in our case. Mitchell expressly reserved deciding the question involved here, i. e. the situation where claimant was successful at the state agency level, and respondent appealed, lost, and then appealed to the appellate state court which reversed and dismissed the claimant's complaint. As noted by the Mitchell court, "if res judicata applies in these circumstances, then deferral to state agencies pursuant to Title VII creates the risk that, by appealing any agency determination favorable to claimant, the respondent can force the claimant into the state courts and foreclose a federal action." Mitchell v. National Broadcasting Co., supra, 553 F.2d at 275 n.13. We find this result unacceptable and contrary to the policies of Title VII.
 
 
 18
 We therefore conclude that while the prior state proceedings are entitled to weight in the federal district court's factual determinations, the doctrines of res judicata and collateral estoppel do not bar this subsequent Title VII action in federal court.[7]
 
 
 19
 Appellants' contention on the merits is that a bfoq exists upon which the state may premise its CO II classification. 42 U.S.C. § 2000e-2(e). The United States Supreme Court has held "that the bfoq exception was in fact meant to be an extremely narrow exception to the general prohibition of discrimination on the basis of sex." Dothard v. Rawlinson, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977). In formulating the rule for finding a bfoq exception, that court stated it is
 
 
 20
 the virtually uniform view of the federal courts that § 703(e) provides only the narrowest of exceptions to the general rule requiring equality of employment opportunities. This view has been variously formulated. In Diaz v. Pan American World Airways, 442 F.2d 385, 388, the Court of Appeals for the Fifth Circuit held that "discrimination based on sex is valid only when the Essence of the business operation would be undermined by not hiring members of one sex exclusively." (Emphasis in original.) In an earlier case, Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228, 235, the same court said that an employer could rely on the bfoq exception only by proving "that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved." See also Phillips v. Martin Marietta Corp., 400 U.S. 542 (, 91 S.Ct. 496, 27 L.Ed.2d 613.) But whatever the verbal formulation, the federal courts have agreed that it is impermissible under Title VII to refuse to hire an individual woman or man on the basis of stereotyped characterizations of the sexes, * * *.
 
 
 21
 Id. at 333, 97 S.Ct. at 2728-2729.
 
 
 22
 The district court properly distinguished Dothard, which upheld a male bfoq for "contact positions" in the Alabama maximum security penitentiaries, from the present case involving Iowa's medium security reformatory.
 
 
 23
 At the outset it is necessary to distinguish this case from Dothard, supra which involved the Alabama prison system, characterized by federal district court judge Frank M. Johnson as "horrendously overcrowded", "dilapidated", "filthy", and one of "rampant violence" and "inhuman conditions" which makes it constitutionally intolerable. Pugh v. Locke, 406 F.Supp. 318, 323-325 (M.D.Ala.1976) modified in part 559 F.2d 283, Cert. granted remanding on other grounds and dismissing state parties, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The Supreme Court painstakingly limited its decision upholding a male bfoq in the Alabama penitentiaries to that "peculiarly inhospitable" environment. Anamosa is no rose garden; neither is it the stygian spectre which faced the Supreme Court in Dothard.
 
 
 24
 Gunther v. Iowa State Men's Reformatory, 462 F.Supp. 952, 955 (N.D.Iowa 1979).
 
 
 25
 In this case the appellants have admitted Anamosa explicitly discriminates on the basis of sex in promotion to the CO II status. There is no claim that the plaintiff is unable to satisfactorily perform the duties of the CO II status, other than for the reason of her womanhood. It is therefore a prima facie case of overt sex discrimination, and the burden shifted to Anamosa to show the bfoq was reasonably Necessary to the normal operation of the institution, 42 U.S.C. § 2000e-2(e)(1). Anamosa must establish that the sex-based requirement has "a manifest relationship to the employment in question." Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971).[8]
 
 
 26
 The first contention by appellants is that security reasons allow for the bfoq exception to apply to the CO II classification. The district court determined that Dothard required rejecting the usual Title VII framework which would allow a plaintiff to determine for herself whether to risk the potential danger of the job, and instead, because of the prison context, balance plaintiff's Title VII rights against the possibility of disruption of the prison system. We agree with this analysis, as well as the district court's holding that, concerning the security issue, unlike Dothard, here the scales weigh in favor of plaintiff's rights. Gunther v. Iowa State Men's Reformatory, supra, 462 F.Supp. at 955.
 
 
 27
 Plaintiff concedes, however, that her performance of certain CO II duties involving prisoner strip searches, and surveillance of prison showers and toilets might result in a violation of inmate privacy. She therefore seeks, and the district court ordered, that she be awarded CO II status with a "functional assignment" of duties so as to protect any rights of inmate privacy which might exist.
 
 
 28
 The appellants make two arguments in response to this. The first is that because the toilets at Anamosa are located in the cells themselves, privacy interests would prohibit plaintiff from performing such a large portion of the functions performed by the other CO II's that the bfoq requirement of "reasonably necessary" to the operation of the institution is satisfied. Anamosa additionally argues that any functional assignment would require men to perform all of the high risk duties at Anamosa while women would perform only low risk duties, with both being compensated at the CO II level. It argues that this would be sex discrimination against male CO II's. We agree that if appellants' allegations were established, serious questions would be raised. In examining the evidence in the record, however, we agree with the district court that appellants have not met their burden of proof on this issue. In addition to showing that the hiring of women at Anamosa would undermine the essence of the prison administration, Anamosa must also demonstrate it could not reasonably rearrange job responsibilities in a way to minimize the clash between privacy interests of the inmates, and the nondiscrimination principle of Title VII. Fesel v. Masonic Home of Delaware, Inc., 447 F.Supp. 1346, 1350-51 (D.Del.1978), Aff'd, 591 F.2d 1334 (3d Cir. 1979). See Dothard, supra, 433 U.S. at 346 n.5, 97 S.Ct. 2720 (Marshall, J., dissenting).
 
 
 29
 First we note there are female CO II's at the Iowa maximum security men's penitentiary at Fort Madison, who perform limited duties. The same CO II job description applies at both institutions. Clearly prison officials at Fort Madison do not think a bfoq for the entire CO II classification is "reasonably necessary for the normal operation" of the maximum security prison there, and appellants do not adequately demonstrate how Anamosa is different.
 
 
 30
 Further, an examination of the job descriptions for CO I and CO II does not indicate one calls for more "contact position" duties than the other. In fact the "examples of work performed" list included in the job descriptions indicate there exist at least as many CO II functions as CO I functions which could be performed without invading inmate privacy. Yet administrative changes have allowed plaintiff to perform limited CO I functions without unduly disrupting the system or invading inmate privacy. Plaintiff also performs functions which are otherwise performed by CO II's.
 
 
 31
 Anamosa already adjusts work schedules so that certain male CO II's have remained at a single job function within the CO II status for three years. If these job functions and procedures have not undermined the goals and functions of the reformatory at Anamosa, there is little reason to suggest that scheduling to avoid the invasion of inmate privacy rights by female officers would give rise to undue hardship on the prison administration. Administrative inconvenience cannot justify discrimination. Schaefer v. Tannian, 394 F.Supp. 1128, 1134 (E.D.Mich.1974). Title VII requires administrative necessity, not merely administrative inconvenience, to satisfy the bfoq exception. Diaz v. Pan American World Airways, Inc., 442 F.2d 385, 388 (5th Cir.), Cert. denied, 404 U.S. 950, 92 S.Ct. 275, 300 L.Ed.2d 267 (1971). Given this evidence, we believe the district court properly concluded Anamosa failed to demonstrate that there are no reasonably available alternative practices with less discriminatory impact that would satisfy the legitimate needs of the institution. Fesel v. Masonic Home of Delaware, Inc., supra, 447 F.Supp. at 1350-51. See Green v. Missouri Pacific Railroad, 523 F.2d 1290, 1298 (8th Cir. 1975).
 
 
 32
 By upholding plaintiff's claim in the present action, we are not holding that Anamosa could not possibly create a bfoq exception relating to some job functions for correctional officers at the men's reformatory. A proper classification narrowly drawn indicating that most of the duties of that classification would involve shower and toilet surveillance, strip searches and related duties necessary to inmate privacy may satisfy a bfoq for males at Anamosa, or females at a women's institution. We need not decide that question. What we do hold is that Anamosa's current classification system violates Title VII because it impermissibly attempts to establish a bfoq which has the effect of prohibiting any advancement in a person's chosen field beyond a CO I level because that person is a woman. Advancement to CO III and CO IV levels requires first working as a CO II. Anamosa has failed in its burden of demonstrating that the entire job classification of CO II meets Title VII's "extremely narrow" bfoq exception in employment discrimination.[9]
 
 
 33
 The district court is affirmed.
 
 
 
 *
 The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted, and took senior status on December 31, 1979, before the opinion was filed
 
 
 [1]
 The Honorable Edward J. McManus, Chief Judge for the United States District Court for the Northern District of Iowa
 
 
 [2]
 42 U.S.C. § 2000e-2(a) provides:
 (a) It shall be an unlawful employment practice for an employer
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
 
 
 [3]
 42 U.S.C. § 2000e-2(e) provides:
 (e) Notwithstanding any other provision of this subchapter, (1) it shall not be an unlawful employment practice for an employer to hire and employ employees, * * * on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise, * * *.
 
 
 [4]
 Compare, e. g., Dickinson v. Chrysler Corp., 456 F.Supp. 43 (E.D.Mich.1978) ("legislative history of Title VII and the compelling language of Alexander v. Gardner-Denver, supra, dictate that jurisdiction of Title VII litigation is exclusively vested in the federal courts") With Bennun v. Board of Governors, 413 F.Supp. 1274 (D.N.J.1976) (jurisdiction is concurrent)
 
 
 [5]
 Cf. Bennun v. Board of Governors, 413 F.Supp. 1274 (D.N.J.1976) (failure to bring Title VII action in state court when bringing state discrimination claim bars federal claim because state and federal courts have concurrent Title VII jurisdiction). This decision rests on the questionable conclusion a Title VII action can be brought in state courts, see note 4 and accompanying text Supra, and is factually different from the case at bar since Ms. Gunther could not raise a Title VII claim in state courts because of Iowa law limiting review of agency decisions
 
 
 [6]
 Assuming the correctness of Mitchell, nevertheless there are several bases for distinguishing between section 1981 and Title VII with regard to the application of res judicata. Several district courts deciding cases after Mitchell and before Sinicropi concluded Mitchell should not be controlling in a Title VII action. Gavin v. Peoples Natural Gas, 464 F.Supp. 622, 624-26 (W.D.Pa.1979); Kremer v. Chemical Constr. Corp., 464 F.Supp. 468, 470-74 (S.D.N.Y.1978), Reconsidered and dismissed in light of Sinicropi, 477 F.Supp. 587, 21 Emp.Prac.Dec. 12,752 (S.D.N.Y.1979); Nickel v. Highway Indus., Inc., 441 F.Supp. 477, 479 (W.D.Wis.1977); Gilinsky v. Columbia Univ., 440 F.Supp. 1120, 1121-22 (S.D.N.Y.1977); Al-Hamdani v. State Univ. of N. Y., 438 F.Supp. 299, 301-303 (W.D.N.Y.1977)
 We agree with these courts that the unique statutory scheme of Title VII supports the proposition that res judicata and collateral estoppel should not be applied. Title VII's requirement of first deferring to state remedies, 42 U.S.C. § 2000e-5(c), would be frustrated by applying a bar to federal actions because a state court had decided an appeal from a state agency decision. Batiste v. Furnco Constr. Co., supra, 503 F.2d at 450. Further, unlike other civil rights statutes, Title VII clearly provides for a De novo hearing in federal court. Chandler v. Roudebush, 425 U.S. 840, 844-45, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). The language of Title VII does not indicate Congress intended to limit this provision by giving res judicata or collateral estoppel effect to state proceedings and we would have reservations in judicially creating such a limitation. See Benneci v. Department of Labor, 388 F.Supp. 1080, 1082 (S.D.N.Y.1975).
 
 
 [7]
 Appellants urge Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) requires the application of collateral estoppel to the Title VII action here. The Court in Montana stated the application of collateral estoppel in the case before it depended on three factors, (1) whether the issues presented in the federal litigation are in substance the same as those resolved in the state court; (2) whether controlling facts or legal principles have changed significantly since the state court judgment; and (3) whether other special circumstances warrant an exception to the normal rules of preclusion. 440 U.S. at 155, 99 S.Ct. 970
 For the reasons stated in our disposition of the res judicata and collateral estoppel issue, it is our view that Title VII has created a "special circumstance" which warrants an exception to the normal rules of preclusion. This is especially true where plaintiff did not seek state court review, but was forced to defend by appellants' appeal.
 
 
 [8]
 It is conceded here that the employment practice is overtly discriminatory, and so violates Title VII unless there is a bfoq reasonably necessary to the normal operation of the particular enterprise. 42 U.S.C. § 2000e-2(e)(1). See note 3 Supra. Other cases find a facially neutral employment practice to be discriminatory in practice. This type of employment practice is justified only if it meets a judicially created "business necessity" test. Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). We follow the analysis of the Supreme Court in Dothard in our examination of the bfoq issue, though realizing this analysis is similar to and overlaps with the judicially created "business necessity" test. Compare, e. g., Diaz v. Pan American World Airways, Inc., 442 F.2d 385, 387-88 (5th Cir.), Cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971) (bfoq analysis) With Green v. Missouri Pac. R.R., 523 F.2d 1290, 1297-98 (8th Cir. 1975) (business necessity analysis applied to facially neutral statute)
 
 
 [9]
 We agree with the comment of Justice Reynoldson of the Iowa Supreme Court in his dissent from that court's decision in this controversy. He was of the view that the conclusion reached at the state agency level (which essentially is our result here) would create "still another irrational classification in a system which, at least as it relates to (the Iowa Men's Reformatory), is riddled with inconsistencies." Iowa Dept. of Soc. Serv. v. Iowa Merit Employ. Dept., supra, 261 N.W.2d at 170 (Reynoldson, J., dissenting). Justice Reynoldson would have remanded the case to the I.M.E.C. to establish new job classifications. We do not have the I.M.E.C. as a party to this litigation, and Justice Reynoldson's view is not an option available to us. As a practical matter, however, it would appear possible to resolve this controversy by reclassifying the job descriptions giving consideration to the factors enumerated in Justice Reynoldson's dissent