Pamela JONES, Plaintiff,

v.

HINDS GENERAL HOSPITAL, Defendant.

Civ. A. No. J86–0290(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

May 12, 1987.

Firnist J. Alexander, Jr., Jackson, Miss., for plaintiff.

Kenneth E. Milam, Gary E. Milam, W. Thomas Siler, Jr., Miller, Milam & Moeller, Jackson, Miss., for defendant.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause was tried before the court sitting without a jury and the court heard testimony from witnesses and reviewed exhibits admitted in evidence. Plaintiff Pamela Jones brought this action alleging that defendant Hinds General Hospital (Hospital) discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This court has jurisdiction of the parties and the subject matter of this action, and based on the evidence adduced at trial, the court makes the following findings of fact and conclusions of law.

In cases alleging disparate treatment under Title VII, the plaintiff bears the initial burden of proving a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To establish a prima facie case of sex discrimination, plaintiff must show that (1) she is a female, (2) she sought to retain a job for which she was qualified, (3) she was laid off, and (4) defendant retained male employees having less seniority than plaintiff. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. By establishing a prima facie case, plaintiff creates a rebuttable presumption that the defendant unlawfully discriminated against her. The burden then shifts to the defendant to articulate some legitimate non-discriminatory reason for its actions. Finally, the plaintiff must be allowed to demonstrate that the alleged non-discriminatory basis for the employment decision was no more than a pretext for unlawful discrimination.

In the case at bar, Jones began her employment with the Hospital on January 21, 1981 as a nurse assistant. After the Hospital began experiencing a decrease in patient census, Hospital management determined that it was necessary to layoff eleven of its approximately sixty nursing assistants, which it did in June of 1984. All of those laid off were female, including Pamela Jones.

At the time of the layoff, the Hospital employed seven male orderlies, four of whom were full-time and three of whom were used on an as-needed basis. None of these male orderlies were considered for layoff, despite the fact that some had less seniority than Jones.[1] These male orderlies performed essentially the same duties as nurse assistants, including bathing bed patients or assisting patients in bathing, prepping for surgery and administering enemas. One procedure which Hospital policy allowed male nurse aides and orderlies to perform, but prohibited female nurse aides from performing, was catherization. Female nurse aides were not allowed to perform this procedure at all, whereas male nurse aides and orderlies were trained and permitted to catherize male patients, but not female patients.[2]

In the court's opinion, plaintiff has established a prima facie case of discrimination. However, defendant contends that it did not violate Title VII by laying off employees based on sex because, under the circumstances, male gender is a bona fide occupational qualification for Hospital orderlies.

While Title VII prohibits discrimination in employment based on an individual's race, color, religion, sex or national origin, 42 U.S.C. § 2000e–2(a)(1), the Act itself recognizes that an employer may employ an individual based on his race, color, religion, sex or national origin where that particular characteristic is a bona fide occupational qualification (BFOQ) which is reasonably necessary to the normal operation of the

1. Alan Kelly and Levi McBride, two of the full-time orderlies, were hired by defendant in 1984, whereas plaintiff's employment with defendant commenced in 1981. Jeff Ball and Charles Farmer, both as-needed orderlies, were hired in 1983 and 1984, respectively.

2. The apparent rationale behind this policy was the predominance of female registered and licensed nurses who were available to catherize female patients as compared with only two or three male nurses available for male patients.

particular business or enterprise. 42 U.S.C. § 2000e–2(e)(1). The existence of a BFOQ justifies discrimination on the basis of sex, but provides "only the narrowest of exceptions to the general rule requiring equality of employment opportunities." *Dothard v. Rawlinson*, 433 U.S. 321, 333, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977); *see also Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228, 232 (5th Cir.1969). The Hospital asserts that none of its orderlies were laid off in July of 1984 because at least one orderly was required to be in the Hospital at all times in order to protect the privacy interests of defendant's male patients. Various functions performed by nurse assistants or orderlies entail the manipulation or exposure of patients' genitalia or other private areas of their bodies. To preserve its male patients' interests in privacy and dignity, defendant asserts it was necessary to retain all orderlies who were on the staff at the time of the layoff.

█ To establish a BFOQ, defendant must prove: (1) a factual basis for its conclusion that the privacy interests of its male patients would be undermined by failing to hire a sufficient number of male orderlies, *see Diaz v. Pan Am World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); (2) that it had a basis in fact for believing that all or substantially all women would be unable to safely and efficiently perform the duties of the job; and that (3) because of the nature of the operation of the Hospital, it could not rearrange job responsibilities in a way that would eliminate the clash between the privacy interests asserted by defendant and the employment opportunities of the female plaintiff. *Hardin v. Stynchcomb*, 691 F.2d 1364, 1371 (11th Cir.1982); *Gunther v. Iowa State Mens' Reformatory*, 612 F.2d 1079, 1086 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980).[3]

A number of courts have recognized the privacy interests of individuals in cases involving Title VII sex discrimination claims and have concluded that such privacy rights can justify a "same-sex" BFOQ. *See, e.g., Fesel v. Masonic Home of Delaware, Inc.*, 447 F.Supp. 1346 (D.C.Del. 1978), *aff'd mem.*, 591 F.2d 1334 (3rd Cir. 1979) (factual basis existed for believing that female patients in retirement home would object to intimate touching by male nurses and defendant demonstrated that employees' schedules could not be adjusted to avoid privacy violation); *City of Philadelphia v. Pennsylvania Human Relations Comm'n*, 7 Pa.Cmwlth. 500, 300 A.2d 97, 103 n. 7 (1973) (policy of defendant youth center requiring hiring of supervisory personnel of same sex as inmates due to contact with youths upheld as legitimate BFOQ based on constitutional right to privacy).

The job duties of male and female nurse assistants and male orderlies often require that such employee view or touch the private parts of their patients. While at the time of the layoffs there was an abundance of female nurse assistants available for female patients, the Hospital had very few male personnel who could perform these functions for male patients. Testimony at trial indicated two situations in which male orderlies are utilized to perform intimate procedures on male patients. The first is when the patient is alert and objects to the performance of such procedures by females. The second is where, in the professional judgment of the nurse in charge, the individual should be attended by male personnel. The nurse in charge, upon each patient's admission to the Hospital, conducts a short, informal interview with him;

---

3. Plaintiff argues that defendant may not utilize the BFOQ defense since the wording of the applicable statute applies only to employers' decisions to "employ or hire." That is, the statute does not specifically refer to layoffs. This argument is without merit. *See Local 567 American*

*Federation v. Michigan Council 25*, 635 F.Supp. 1010 (E.D.Mich.1986) (privacy interests of mental health patients sufficient basis for same-sex BFOQ relating to layoffs, transfers and recalls of female workers).

in determining whether the patient is susceptible to being embarrassed by exposure of his genitals to unknown females, the nurse considers the nature of the procedure to be performed together with the patient's age, and generally, the attitude he conveys in response to questioning by the nurse. In both of these two situations, the Hospital strives to make available a male orderly for the performance of intimate functions to protect the male patient's privacy interest.

Based on the testimony of defendant's witnesses, including Richard McCormick, Assistant Hospital Administrator, two head nurses, Connie Martin and Joyce E. Hardy, and Dr. Woodie L. Mason, a urologist who practices at the Hospital, it was evident that a significant number of male patients object to being exposed to female nurse assistants. Dr. Mason testified, for example, that a number of his patients are uncomfortable with female handling of their genitals. According to Dr. Mason, some of his patients, particularly older men, are terribly modest and become quite upset at the prospect of female nursing assistants viewing or touching their private areas. Further, Connie Martin and Joyce Hardy both testified that where the procedure to be performed is a very intimate one, involving exposure of the patient's private parts to nurses or women with whom the patient is not familiar, and if the patient himself is alert, every effort is made to have an orderly perform the procedure. Nurse Martin related that *all* male patients do not necessarily request male orderlies, but stated that, depending on the procedure to be performed, she herself would request an orderly where the patient was alert and, in her judgment, might be embarrassed by a female nurse or nursing assistant. On her floor, whenever a patient is conscious and alert and requires catherization or prepping of his genital area, she requests an orderly. Moreover, according to Martin, she has had patients refuse to have procedures performed if a male was not available. Similarly, Nurse Hardy testified that in the past, she has heard objections from male patients and their family members to having intimate functions performed by female nurses or nurse aides.

All of these witnesses admitted that there are occasions on which certain intimate procedures are performed on male patients by female nurses, such as catherization or prepping of private parts, and by nurse assistants, such as bathing and giving enemas. However, if in the opinion of the head nurse the patient would object, or if the patient himself does in fact object, the procedure is that a male orderly, if available, be called to perform the procedure in question. Where a male orderly is simply not available, including emergency situations, procedures such as catherization are performed by female nurses. But every effort is made to accommodate the needs of each male patient, and to respect his interest in privacy and dignity.

■ The court finds that defendant has established that a substantial number of its male patients do object to intimate touching by female nursing assistants, and it thus follows that all or substantially all females are inappropriate to perform the functions of male orderlies. *See Backus v. Baptist Medical Center,* 510 F.Supp. 1191, 1195 (E.D.Ark.1981), *vacated on other grounds,* 671 F.2d 1100 (8th Cir.1982). However, defendant must also establish that there are no reasonably available alternative practices with less discriminatory impact that would satisfy the legitimate needs of the Hospital, that is, the protection of its male patients' privacy interests. The court is of the opinion that the defendant has sustained its burden in this regard.

At the time of the layoff, defendant had four full-time orderlies and two or three orderlies who were used on an "as needed" basis. Each of the defendant's full-time orderlies was scheduled to work seven twelve-hour shifts in a fourteen-day work period, such that one orderly was present at the Hospital at all times. Rather than being assigned to a specific floor, as male nursing assistants were, orderlies were assigned to a float pool—one was available

on each shift to float throughout the Hospital and do what was needed wherever it was needed to be done. The "as-needed" orderlies filled in for full-time orderlies who were required to be away from work due to illness, personal emergency or vacation. Therefore, the minimum number of full-time orderlies necessary in order that defendant could have one orderly in the Hospital at all times was four, and even with four, the testimony indicated that more were needed.

While the Hospital did have two male nursing assistants [4] and two or three male registered nurses at the time of the layoff, those individuals were assigned to specific units within the Hospital and had responsibilities in those units which made it impractical for them to leave to go to other areas of the Hospital. Consequently, in the opinion of the court, there were no reasonable scheduling alternatives available that could have been used by the Hospital to preserve privacy interests of male patients.

The court finds that the defendant has established sex as a BFOQ reasonably necessary to the normal operation of the Hospital, and plaintiff has failed to demonstrate that this was a pretext for unlawful discrimination. As such, judgment will be entered in favor of defendant dismissing the plaintiff's claims of discriminatory layoff.

---

4. The two male nursing assistants, unlike the orderlies, were considered for layoff along with the Hospital's female nurse assistants, but were not laid off because they were not among the eleven nurse assistants with the least amount of seniority.