TRUDY UNGER, Plaintiff-Appellee, *v.* SIRENA DIVISION OF CONSOLIDATED FOODS CORPORATION *et al.,* Defendants-Appellants.

First District (3rd Division)   No. 76-1634

Opinion filed May 24, 1978.—Rehearing denied June 26, 1978.

Zachary D. Fasman and David J. Parsons, both of Chicago (Seyfarth, Shaw, Fairweather & Geraldson, of counsel), for appellants.

John A. Cook and Quinn, Jacobs & Barry, both of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This matter arises from two charges against defendant Sirena Division filed by plaintiff Trudy Unger with the Illinois Fair Employment Practices Commission. In the first charge plaintiff alleged that her termination by Sirena in May 1972 was due to sex discrimination. In the second charge plaintiff alleged that after she was rehired by Sirena and assigned to a new territory, she was discharged in October 1972 in retaliation for filing the initial charge with the commission. Hearings were held before a hearing examiner who submitted a recommended decision to the commission. The examiner recommended dismissal of the first charge, but found the second discharge was a retaliatory measure. After hearing arguments, the commission ordered dismissal of both charges. Plaintiff brought an action in the circuit court, and the court held that the commission's findings were against the manifest weight of the evidence. Sirena appeals. It contends that plaintiff was an independent contractor not covered by the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 851 *et seq.*); that the trial court erred in reversing the commission's finding that plaintiff's original discharge in May 1972 was not sexually discriminatory; and that the commission correctly found that plaintiff's second discharge in October 1972 was not a retaliatory measure.

The facts underlying this dispute are as follows. Sirena is engaged in the manufacture, distribution and sale of women's swimwear. Its merchandise is sold to retail stores by independent sales representatives who have exclusive rights to sell the Sirena line within various geographical territories. From August 1963 until May 1972, plaintiff was employed as Sirena's sales representative for the territory comprised of Michigan, Illinois, Indiana, Minnesota, Wisconsin and Ohio.

Plaintiff was hired by letter agreement in August 1963. Under this agreement plaintiff was an "independent agent" responsible for all travel and other selling expenses, taxes, and licenses. She was free to set her own schedule and to call upon customers she selected, and she was to pay for expenses she incurred. She was not required to account to Sirena for her daily activities. Plaintiff could carry noncompetitive lines and the agreement acknowledged that she had such lines at that time.

Plaintiff's contact with Sirena was through orders placed and weekly telephone conversations regarding business operations such as shipping and delivery problems. According to plaintiff, she discontinued representing other lines in 1969 or 1970. At that time she approached Arnold Seckler, president of Sirena, and vice-president Maurice Newman to discuss the possibility of becoming an exclusive sales representative for Sirena. As such, her status would change to that of a salaried employee and she would be eligible for hospitalization and other benefits. Sirena

never granted that request but, as of August 1969, paid plaintiff $100 each month to reimburse her for expenses incurred in maintaining a Chicago showroom. Plaintiff continued to receive a seven percent commission of the gross sales on all business booked by Sirena or its agents in her territory. In addition, she received a 3.5 percent commission on the sale of closeout merchandise.

During the period she was engaged as a sales representative for that territory, plaintiff's dollar volume of sales increased from $22,000 to $572,000. Her percentage of the total company business increased from 6.3 percent in 1963 to 12.5 percent in her final year. Throughout this time, plaintiff was Sirena's only female sales representative.

From 1963 to 1972, Sirena's national sales grew from approximately $350,000 to over $4,700,000. In accordance with its growth, Sirena developed marketing strategies to meet its competitors and to increase its sales volume. At the commencement of the 1970-71 sales season, Seckler and Newman developed a plan to reorganize the sales force. During the course of the reorganization, Sirena hired a new vice-president to strengthen sales and terminated six of its 11 sales representatives. Plaintiff was among those terminated. According to Newman, the reorganization was designed solely to accomplish a shift in marketing emphasis away from small specialty shops to large department stores. His decision to terminate those six sales representatives was based upon their inability to handle their respective territories and to service the larger accounts.

Newman testified that starting in 1970 he attempted to correct plaintiff's method of writing department store orders, but she failed to improve. In January 1971, and on other occasions, Seckler and he met with plaintiff to try to correct her shortcomings and to stress the importance of department store sales. In November 1971, he made a trip to Chicago to evaluate plaintiff and to urge the importance of placing a concerted effort on department store sales. Plaintiff did not change the manner in which she worked with department stores.

In 1971 Seckler told plaintiff that her overall performance was unsatisfactory. Her territory accounted for more than 22 percent of the buying power in the country and sales of Sirena's competitors in her territory were far better. At that time, Newman told plaintiff that too great a burden of servicing midwest accounts was falling on the New York office. He testified his records showed that plaintiff utilized the New York office more than other representatives. According to Newman, such undue reliance was also a reason for the termination of two other sales representatives.

In a letter dated May 31, 1972, plaintiff was advised of her discharge effective July 31, 1972. The reason given was that "* * * due to the growth that has occurred in Sirena nationally and due to the necessity of

fueling our continued plant expansion, it has become necessary to both strengthen and reorganize our sales staff."

In June 1972, plaintiff asked Seckler to reconsider the decision. Later that month plaintiff was offered the position as sales representative for the territory of Iowa, Missouri, Kansas, Nebraska, and Illinois (except Chicago). The former sales representative had been terminated because he was not doing an adequate job. After Seckler offered plaintiff the position, she called Newman and accepted. She told Newman that she wished to become a part of the organization again. On June 30, 1972, the parties entered into a written agreement whereby plaintiff was appointed sales representative for the new territory. Under the agreement, plaintiff was given exclusive rights in the territory, a seven-percent commission, and the right to carry noncompetitive lines.

At the hearing, plaintiff introduced letters which Seckler had written in 1963, 1964, and 1966. Seckler wrote to advise plaintiff of the importance of her territory and the role which she was to play in bringing the territory into prominence. Seckler expressed his confidence in plaintiff's ability and told her he hoped that her territory's yield would improve. Plaintiff also introduced a letter from Seckler dated June 30, 1972, in which he told plaintiff that he was glad to have her "back on board."

According to Newman, the Sirena sales season commences September 1 when sample lines are sent to each sales representative. The first month of the sales season is critical because Sirena ordinarily books 30 to 35 percent of its annual sales at that time. In order for retail stores to have their merchandise in time for the winter cruise season, the orders must be obtained at the beginning of the season. Newman testified that early sales assist in obtaining subsequent sales throughout the year because most department stores plan their annual business during the cruise season. In addition, Sirena uses early sales to determine what styles will be profitable during the rest of the year.

On September 8, 1972, Newman telephoned plaintiff to advise her that all other sales representatives were on the road and to urge her to begin selling in her territory. On September 12 he again told plaintiff that it was imperative that she start traveling since she was the only sales representative who had not begun to travel. Newman told her to concentrate on department store sales and he expressed concern about two stores. Plaintiff said that she would only travel within a 50-75 miles radius of Chicago at first and did not plan to call on stores in several states until late October and November. Newman replied that such a schedule would be too late to make delivery dates for the cruise season.

Newman thereafter telephoned plaintiff and advised her that she was not performing any better than her predecessor who had been discharged. Plaintiff stated that she was running the territory in the way

she wished. Newman told her she was running it contrary to industry principles and that she had not yet called on the three stores which accounted for a large percentage of her projected volume.

Plaintiff testified that during the six weeks following her receipt of Sirena samples, she programmed her work so as to cover accounts within the 50-100 mile radius of Chicago. She did this to conserve on travel expenses and to arrange to carry a line with Beldock-Popper in her former territory. Plaintiff did not travel in her territory prior to her discharge in October. She testified that she planned to attend a show in St. Louis in October and one in Chicago in November. She planned to cover her territory later in the season because she did not believe cruise season orders to be too important. In plaintiff's opinion sales made to some of the department stores in her territory also were not too important.

Plaintiff introduced two memoranda sent to her by Janet Tolsky of Sirena's home office. They contained information concerning the commission balance owed plaintiff and a personal message encouraging plaintiff. Plaintiff also introduced into evidence a letter from Dolores Tessendorf, an executive secretary at Sirena. The letter, dated June 20, 1972, congratulated plaintiff on still being with Sirena, and added: "Maybe it's not *JUST* a man's world after all."

According to Sirena's records, plaintiff's sales in her new territory for the period ending October 13, 1972, amounted to $21,062. This figure exceeded the preceding year's sales by more than $7,000.

On October 2, 1972, plaintiff filed a complaint with the commission alleging that her discharge as sales representative for the first territory had been discriminatory. Newman testified that he learned of this on October 13, 1972, when his secretary told him the company had received some papers concerning a lawsuit. Newman discussed the complaint with plaintiff on the telephone and asked, since she was still with Sirena, why she had filed suit. Newman told plaintiff that he had been interviewing people to replace her as sales representative. He said he thought plaintiff should resign because things were not working out in her territory and he did not understand why she would want to sue and still work for Sirena.

On October 16, 1972, Seckler telephoned plaintiff to discuss the charge she had filed and told her he thought she was ill-advised to file the charge and that litigation would be costly. On the same day he wrote plaintiff terminating her appointment as a sales representative for Sirena. On October 26, 1976, plaintiff filed a second charge of unfair employment practice with the commission. In her complaint plaintiff alleged that her discharge on October 16 was a retaliatory discharge in violation of the statute. Ill. Rev. Stat. 1971, ch. 48, par. 853(d).

■■ We initially and succinctly address the issue of whether plaintiff was an employee entitled to coverage under the FEPA. The definition of

employee in the FEPA is broad, and the exclusions set out are narrow ones. We agree with the holding of the commission that plaintiff was an employee of Sirena and, therefore, within the ambit of the FEPA.

Sirena next contends that the trial court erred when it reversed the commission's finding that plaintiff's first discharge in May 1972 was not the result of sexual discrimination. Under the FEPA, the commission must determine whether discrimination occurred based upon the preponderance of the evidence. (Ill. Rev. Stat. 1971, ch. 48, par. 858(f).) In reviewing the commission's action, the court must decide whether the agency's determination is against the manifest weight of the evidence. (*General Electric Co. v. Illinois Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 349 N.E.2d 553.) Upon review of the dismissal of a charge by the commission, the proper scope of review is to ascertain from an adequate record whether the commission's order of dismissal is arbitrary, capricious, or an abuse of discretion. (See *Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370.) The commission found it significant that plaintiff was one of six sales representatives terminated as a result of a division-wide reorganization. All of the other representatives were men. The commission noted that of all the persons discharged, only plaintiff was rehired. Because the boundaries of the sales territories . were changed during the reorganization, the commission discounted plaintiff's assertion that she was assigned to a different territory with less profit potential because of her sex, and it observed that plaintiff replaced a male sales representative in the new territory.

■■ Based on the foregoing evidence, the commission concluded that none of Sirena's actions towards plaintiff with regard to her May 1972 discharge were shown by the evidence to have been discriminatory. The commission rejected plaintiff's contention that her termination and reassignment were not fully justified by her record with Sirena. We agree with the commission that the question to be determined is whether she was treated differently than male sales representatives similarly situated. (See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817; *A. P. Green Services Division of Bigelow-Liptak Corp. v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 875, 312 N.E.2d 314.) We hold that the commission's findings are amply supported by the record and are not contrary to the manifest weight of the evidence.

■■ We must also consider whether the commission's finding that plaintiff's second discharge in October 1972 was for legitimate reasons rather than in retaliation was proper. Plaintiff first argues that the commission lacked jurisdiction to consider this issue because her petition for review addressed only the question of her first discharge and Sirena

did not seek review on the issue of whether a retaliatory discharge occurred. Under the FEPA, all matters raised in the record before the hearing examiner are properly before the commission. (Ill. Rev. Stat. 1975, ch. 48, par. 858.02(c).) Therefore, the commission possessed jurisdiction to consider and rule on plaintiff's second charge.

Under FEPA, it is an unfair employment practice:

> "For any employer * * * to discriminate against any person because he or she, reasonably and in good faith, has opposed any practice forbidden in this Act, or because he or she, reasonably and in good faith, has made a charge, testified or assisted in any investigation, proceeding or hearing under this Act * * *." Ill. Rev. Stat. 1975, ch. 48, par. 853(d).

The hearing examiner made the following findings with respect to the second charge filed by plaintiff. Plaintiff failed to travel in her new territory despite repeated requests by Newman and Seckler that she call upon customers before it was too late to fill orders for the cruise season. Plaintiff represented a noncompeting line in an adjacent territory and Sirena maintained that such would impair her ability to handle the territory assigned to her. Other sales representatives for Sirena had taken on lines in adjacent territories and were terminated immediately. Plaintiff, however, was not told that acceptance of the line would result in termination. Plaintiff was terminated two weeks after she assumed the Beldock-Popper line and after she filed her original discrimination charge. On the day Sirena became aware defendant had filed a charge, Newman suggested she resign. Newman told plaintiff that if she did not return his call by a specific time, he would consider her discharged. Three days later Seckler called plaintiff, advised her to drop her charge, and threatened to file suit. Immediately after he talked to plaintiff, Seckler wrote terminating her appointment as sales representative.

■■ Under FEPA, "[T]he commission shall review the record and may adopt, modify or reverse in whole or in part the findings and recommendations of the hearing examiner. The Commission shall adopt the hearing examiner's findings of fact if they are not contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1975, ch. 48, par. 858.02(d).) In its order the commission adopted the hearing examiner's findings of fact as set out above, but rejected his recommendation to sustain the retaliation charge. We agree with the commission's ruling.

The commission determined that for some time prior to plaintiff's second discharge by Sirena, Newman and Seckler had been in regular contact with her. During that time they exhorted her to concentrate on selling Sirena merchandise and to commence traveling in her new territory. The undisputed evidence is that plaintiff ignored these directives.

Plaintiff was obligated to carry out her sales duties in the new territory according to the terms of her employment. Since 1970 Newman and Seckler had attempted to correct plaintiff's sales methods. Plaintiff admitted that she did not change her approach and continued to service her territories in the manner she believed best. In September 1972, Newman complained to plaintiff about her inaction and warned her of the consequences if she did not put forth a better effort. Plaintiff did not respond to those warnings, and conceded that she did not travel in her territory prior to her termination. She offered as an explanation only her belief that certain practices were not important. She also testified that during her second employment she was concerned with obtaining a noncompetitor's line in her old territory. Plaintiff's conduct toward Sirena was insolent and insubordinate. The record as reflected both by the examiner's findings and plaintiff's own testimony disclosed overwhelming support for Sirena's decision to terminate her employment and for the commission's determination that the termination was not retaliation.

Plaintiff has pointed out that she was Sirena's only female sales representative and that she was replaced by a single interviewee, a man. We do not perceive how that fact reveals any retaliation. Moreover, the record shows that her predecessor, a male, was discharged because of inadequate performance. Importantly, her replacement was interviewed weeks before plaintiff filed any charge of discrimination. It is undisputed that plaintiff's difficulties in employment long predated her second discharge. In considering a charge of this type, the timing of events is only one element which would show discrimination. As the commission noted in its order, to hold in the context of this case that the termination became retaliatory when Sirena learned of plaintiff's discriminatory charge would be tantamount to advising employers to discharge employees immediately when grounds become apparent before they are precluded by the filing of an intervening charge. If defendant proves valid reasons for the discharge, plaintiff must then demonstrate that the assigned reasons were a pretext or discriminatorily applied. (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817.) In the present case, plaintiff failed to so demonstrate. The commission correctly reversed the recommendation of the hearing examiner as to the October discharge. We believe the trial court erred in reversing the commission's ruling.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

JIGANTI, P. J., and SIMON, J., concur.